## ELY *vs.* THE NEW HAVEN STEAMBOAT COMPANY.

*It seems* that the extraordinary liability of the proprietors of a steamboat, as common carriers of freight, ceases when the goods transported by them are landed on the wharf, at the place of destination, and are ready for delivery; that thenceforth they are liable only for ordinary care; and that the law does not require from that class of carriers a notice to consignees of the arrival of the goods carried.

But the evidence may establish a course of business between the parties with respect to the mode of delivering goods, which will govern the liability of the carriers in any particular case.

The plaintiffs had been accustomed, for many years, to receive goods, at New York by the defendant's steamboats, as often as once a week. Such boats arrived in New York, each day, at stated hours, morning and evening. Upon the arrival of the boat, each trip, the goods on board were landed on the defendant's wharf, and placed in charge of trustworthy persons employed by them to take care of and deliver the goods to the consignees, and collect the freight, and the boat then started upon her return trip. The plaintiffs always sent their own carman to the wharf, for their goods, soon after the arrival of the boat, and there received them from the persons so employed by the defendants.

*Held* that a delivery of goods consigned to the plaintiffs, upon the wharf, in the usual way, and the lapse of a reasonable time for the plaintiffs to take away or reject the goods terminated the extraordinary liability of the defendants as common carriers, for the reason that their contract had been performed by a carriage of the goods safely to the point of ultimate destination, and a delivery thereof at the appointed place of delivery. That after those acts, the defendants must be deemed to have renounced their liability as common carriers and assumed that of wharfingers, and they could be held liable only for actual negligence.

Accordingly, where goods consigned to the plaintiffs, after being transported from New Haven to New York upon a boat of the defendants, were landed upon the wharf, at the latter place, early in the morning of July 4th, where they remained, without being called for by the plaintiffs, until about two o'clock A. M. of July 5, when they were destroyed by an accidental fire; *Held* that the defendants were not liable for the value of the goods.

Where the contract, in terms, or as affected by the usage of trade, is to deliver the goods at the wharf, notice to the consignee, of their arrival, is not necessary. It is not itself an act of delivery, or equivalent or even akin to it. It is a substitute for it, arbitrarily created.

If usage requires notice to be given to the consignee, the fact that the store of the latter was closed the whole of the day on which the goods arrived, and until after they had been destroyed, will excuse the carriers from giving such notice. They are not bound to go beyond the usage, and seek the consignees elsewhere than at their place of business.

Ely *v.* New Haven Steamboat Company.

The facts that goods arrive on the 4th of July is immaterial; that not being a
holiday in any sense which affects an action brought to enforce the liability
of common carriers as such.

THIS action was brought against the defendants, as common carriers, to recover for the loss of certain leather received by them for transportation from New Haven to New York. The plaintiffs were the agents of the tanneries of Homer Ely and Cotton Ely, of Ashleyville, in Massachusetts, the consignors of the property, and sued as their assignees. The leather was delivered at Springfield, Massachusetts, to the Hartford and New Haven Railroad Company, and by that company delivered at New Haven, on on the 3d July to the defendant's steamer, *Continental,* which arrived at her pier in New York, at her usual hour, early in the morning of July 4. The cargo of the vessel, including this leather, was all put on the wharf by eight o'clock, A. M. ready to be taken away by the various consignees, and persons were in attendance during the day to make deliveries of goods. No one called for the leather, and about 2 A. M. of July 5th, an accidental fire destroyed the cargo left upon the pier. The leather was marked and addressed, "H. G. Ely & Sanger, 2 Jacob street, New York." There was no bill of lading or shipping receipt given. The plaintiffs had been in the habit of receiving leather from these tanneries by the defendants' line, for some years, as often as once a week, and generally received from the consignors advices by mail of the shipments. The letters advising of the shipments in question were mailed at Ashleyville, where the consignors resided, instead of Springfield, where the goods were put on the cars, and did not reach the plaintiffs till after the fire. Sometimes, letters from Ashleyville were a week in coming. The plaintiffs kept a cartman, who was in the habit of calling at the pier of the defendants and taking away the leather when it arrived. He was not on duty at all on the 4th of July. There was some discrepancy in the evidence

Ely *v.* New Haven Steamboat Company.

as to the practice of notifying the consignees. The plaintiff, Ely, testified that the defendants had always sent notice of the arrival of goods, and that he then sent the cartman for them; but the defendants' witnesses testified that notices were not given to parties in New York, who were the habit of sending for their own goods, except sometimes at the request of the cartmen, and for their convenience, and these notices, when given, were given by Low & Roberts. They were licensed cartmen in New York; they had an office on the defendants' pier, and on the arrival of the boats received the whole freight list, sorted the cargo, and carted such of it as was addressed to parties in the city not in the habit of sending for their goods; such as was to go to some connecting line, they carted, unless it was addressed to the care of other cartmen. On all the goods they carted they charged cartage, in which the defendants had no interest. Low & Roberts were allowed their office on the pier, free of rent, and in consideration of this, and the opportunity of cartage, they attended to the sorting and delivery of cargo, and collected the freight money for the defendants. The defendants' line of boats had been long established, their pier was No. 25 East river, the boats arrived twice a day, morning and evening, and the plaintiffs had known the times of their arrival and their regular order, for several years. The assignments of the cause of action were made to the plaintiffs without consideration, and solely to enable suit to be brought in their names. They had no pecuniary interest in the claims, and on this ground the defendants objected that the action was improperly brought. This point was overruled, but a verdict was directed for the defendants, on the ground that their special liability as carriers had ceased at the time of the fire.

The exceptions were ordered to be heard at the general term, in the first instance.

*Smith & Woodward,* for the plaintiffs.   I. The action was properly brought in the name of the plaintiffs. The legal title to the claims being in them under the assignments, they were the real parties in interest within the meaning and intent of section 111 of the Code. (*Arthur v. Brooks,* 14 *Barb.* 533.   *Richardson* v. *Mead,* 27 *id.* 179. *Merrick* v. *Brainard,* 38 *id.* 574.   *Cummings* v. *Morris,* 25 *N. Y. Rep.* 625.)

II. The liability of the defendants as common carriers, for loss by fire, continued until the delivery of the goods to the plaintiffs.   A delivery at the wharf must have been to some person authorized by the plaintiffs to receive them, or due notice must have been given to them of the time and place of delivery.   (2 *Kent's Com.* 605.   *Story on Bail.* §§ 507, 511, 528; *see also* §§ 543, 544, 545.   *Miller* v. *Steam Nav. Co.,* 10 *N. Y. Rep.* 431.   *Ostrander* v. *Brown,* 15 *John:* 39.   *Heron* v. *Ship Grafton, Olcott's Rep.* 43.   *Price* v. *Powell,* 3 *Comst.* 322.   *Goold* v. *Chapin,* 20 *N. Y. Rep.* 259.   *Ladue* v. *Griffith,* 25 *id.* 364.   *McDonald* v. *Western Railroad Co.* 34 *id.* 497.   *Fenner* v. *Buffalo and State Line Railroad Co.,* 46 *Barb.* 103.)

III. To make a delivery on the wharf a substitute for personal delivery, and to excuse the defendants from giving notice to the plaintiffs, so as to exempt them from liability for loss by fire on the wharf, they must prove, by clear and satisfactory evidence, the existence of a long continued and notorious custom for vessels to deliver, and consignees to receive, goods on the wharf without notice. 1. There is no evidence of any such custom in this case; on the contrary, it appears, from the testimony of the defendants, that they have been doing business with the plaintiffs for years under a uniform custom for the defendants to give notice of the arrival of goods consigned to the plaintiffs; that the plaintiffs have always waited for such notice, before they sent for their goods, and they had a right to such notice, before the defendants could be relieved from

their responsibility, as common carriers, to deliver the goods. (*Angell on Carriers*, §§ 230, 281, 282, 287. *The Schooner Reside* v. *Sumner*, 567. *Gibson* v. *Culver*, 17 *Wend.* 305.)

IV. The 4th of July was a national and state holiday, on which places of business are usually closed, and no business was done on that day. No notice of the arrival of goods, and no goods were sent out by the defendants on that day. The placing of the goods upon the wharf of the defendants on that day, and under such circumstances, cannot, in law, be deemed a delivery to the plaintiffs, so as to discharge the defendants from loss by fire on the wharf. (2 *R. S.* 285, § 54, *Laws of* 1830, *p.* 396, § 39. *Id.* 1849, *p.* 392. *Id.* 1865, 261. *Richards* v. *Goddard*, 23 *How. U. S.* 28.)

*S. P. Nash*, for the defendants. I. Carriers by railroad or steamboat, whose routes end at known depots or wharves, their cars or boats arriving at regular times, are discharged from their *special liability* as carriers, as soon as the goods are landed at their destination, and ready for delivery to the consignees. Their subsequent liability is only for ordinary care. (*Redfield on Railways*, 1*st* ed. 249, 259; *vol.* 2 *of* 2*d* ed. 54, 55. *The Norway Plains Co.* v. *The Boston, &c. Railroad*, 1 *Gray*, 263. *Thomas* v. *The Boston, &c. Railroad Co.*, 10 *Metc.* 472. *Farm. & Mech. Bank* v. *The Champlain Transp. Co.*, 16 *Verm. Rep.* 52. *S. C.* 18 *id.* 131. 23 *id.* 186. 20 *Ill. Rep.* 404, 407. 11 *Rich. Law, S. C.* 337.) 1. The duty of making personal delivery to the consignee, by carts or otherwise, has never been applied to this class of carriers. It is sometimes said, however, that where personal delivery is not made, notice that the goods are ready for delivery, is necessary in order to terminate the special liability of carriers; but no such rule is established in this state in respect to goods arriving under the circumstances above stated. *Ostrander* v. *Brown*, (15 *John.* 39,) was a case where the goods arrived by sloop,

and part had been delivered. One chest of tea was lost by a misdelivery, and the carrier claimed that the notice had relieved him from *all* responsibility. The *dicta* of the case would at this day need qualification, (*Goold* v. *Chapin*, 20 *N. Y. Rep.* 259, 263 ; *Gibson* v. *Culver*, 17 *Wend.* 305 ;) but the decision does not. conflict with the point here made. *Price* v. *Powell*, (3 *Comst.* 322,) was also a case of an occasional vessel, a brig sailing from New York to Wilmington, and some slabs of marble were found broken, the next day after they were landed. "On the case made, the judge was clearly right in charging the jury, that delivery at the wharf was not sufficient [to discharge the carrier] without notice to the consignee." (*p.* 326.) 2. When a carrier receives goods to be delivered at a distant point by connecting lines, he may remain liable until the goods are *accepted by*, and not merely *tendered to* the next carrier ; for there is a clear distinction between the obligations of a second carrier and those of the owner himself. (20 *N. Y. Rep.* 263.) A tender to the owner or consignee always discharges the carrier. The cases arising as between connecting carriers, (*Goold* v. *Chapin*, 20 *N. Y. Rep.* 259 ; *McDonald* v. *The West. Railroad Co.*, 34 *id.* 497 ; *Blossom* v. *Griffith*, 3 *Kern.* 569 ; *Ladue* v. *Griffith*, 25 *N. Y. Rep.* 364 ; *Fenner* v. *Buffalo, &c. Railroad Co.*, 46 *Barb.* 103,) do not consequently apply.

II. A usage for the consignee to leave the goods till called for, terminates the carrier's special responsibility. (*Gibson* v. *Culver*, 17 *Wend.* 305.) An arrangement between the parties for a similar purpose has the same effect. (*Hathorn* v. *Ely*, 28 *N. Y. Rep.* 78.) In this case, the plaintiffs, with knowledge of the time and place of daily arrival of the defendants' boats, sent regularly their own cartman for their goods. This practice was a waiver of any obligation to give notice, and if they chose to let their goods lie without sending for them, the defendants held them under the liability for ordinary care, not as insurers.

Ely *v.* New Haven Steamboat Company.

III. There is no rule of law requiring notice. Notice in lieu of personal delivery was a relaxation growing out of new methods of carriage, and the necessities of business. It was sanctioned by the courts, not as a new and rigid rule applicable to all cases, like a statute, but as a just modification of a previous rule which the changed modes of conveyance had rendered inapplicable. Notice is not necessary to a passenger coming in the same vessel with his goods or luggage. In such case, the special liability of the carrier ceases, after the property is ready for delivery, as soon as the passenger has had a reasonable time to take it away. (*Roth* v. *Buffalo, &c. Railroad Co.*, 34 *N. Y. Rep.* 548.) Here, the owners of the goods sent them to their own agents, starting their transit at Springfield, on the 3d of July, by a well known route which they had used for years. They knew when they should arrive at New York. A letter mailed at Springfield would have probably reached their consignees as soon as the goods reached the wharf, but they chose to mail their advices of the shipment from a country town with less frequent mails. A telegram would have reached the consignees on the 3d. The plaintiffs are, therefore, chargeable with notice and with delay in sending for their goods.

IV. The plaintiffs cannot claim to extend the liability of the defendants as insurers over the 4th of July, into the 5th, on the ground of the 4th being a holiday. It is not a day on which labor is unlawful. The plaintiffs had a right to close their store if they chose, but no greater right to do so than the defendants to store the goods and go away. If the plaintiffs chose to leave their goods till the 5th, they lost the defendants' responsibility as insurers, and retained only that of ordinary bailees. (*Richardson* v. *Goddard*, 33 *How. U. S.* 28. *Jones* v. *Norw. and N. Y. Transp. Co.*, 50 *Barb.* 193, 194.)

V. The plaintiffs' store was not open, nor was their cartman on duty on the 4th July. A notice would therefore,

have been ineffctual. The point of want of notice, there-fore, simply resolves itself into the question, whether a consignee by closing his business on a holiday can extend the liability of a carrier as insurer for an indefinite period.

VI. The fact that Low and Roberts chose to accommodate their brother cartman by undertaking to send him notices and so save him useless trips to the boat, cannot enlarge the liability of the defendants.

VII. If the goods were still in the custody of the defendants, as carriers, when the fire occurred, the defendants were exempt from liability under the act of congress of March 3, 1851. (*See Moore* v. *West. Transp. Co*., 24 *How. U. S.* 1. *Walker* v. *The Transp. Co.*, 3 *Wallace*, 150.)

*By the Court,* GILBERT, J. It is apparent that the circumstances in which the harsh and rigid rules of the common law, governing the liability of common carriers, had their origin, have greatly changed, and that some amelioration of these rules has become necessary since the introduction of steamboats, railroads and the electric telegraph. Courts, mindful of this necessity, have gradually modified these rules in accordance with their views of public policy and individual right. The precise nature and extent of this modification, however, is still very uncertain, and an attempt to reconcile the conflicting decisions on this subject would be fruitless. If it were necessary, we should be inclined to hold that, independently of the usage proved in this case, the extraordinary liability of the defendants as common carriers ceased when the goods were landed on the wharf and were ready for delivery; that thenceforth they were liable only for ordinary care, and that the law does not require from the class of carriers to which the defendants belong, a notice to consignees of the arrival of the goods carried. Such rule, we think, best accords with sound public policy, and with the intentions of the parties in making the contract, and it is sus-

Ely *v.* New Haven Steamboat Company.

tained by the more judicious of the recent decisions of the courts on this subject. (*Norway Plains Co.* v. *Boston, &c. R. R. Co.* 1 *Gray,* 263. *Thomas* v. *The Same,* 10 *Metc.* 472. *Lamb* v. *West. R. R. Co.,* 7 *Allen,* 98. *Northrup* v. *Syracuse, &c. R. R. Co., Court of Appeals, March,* 1867.) But we are of opinion that the evidence clearly establishes a course of business between the parties in relation to the mode of delivering goods, which must govern the liability of the defendants in this case. The plaintiffs had been accustomed, for many years, to receive goods by the defendants' boats. as often as once a week. These boats arrived in New York each day at stated hours, morning and evening. Upon the arrival of the boat each trip, the goods on board were landed on the defendants' wharf, and placed in charge of trustworthy persons, employed by them to take care of, and deliver the goods to the consignees, and collect the freight, and the boat then started upon her return trip. The plaintiffs always sent their own cartman to the wharf for their goods, soon after the arrival of the boat, and there received them from the persons so employed by the defendants. A delivery upon the wharf, therefore, in the usual way, and the lapse of a reasonable time for the plaintiffs to take away or reject the goods, terminated the extraordinary liability of the defendants as common carriers, for the reason that their contract had been performed by a carriage of the goods safely to the point of ultimate destination, and a delivery thereof at the appointed place of delivery. After those acts, the defendants must be deemed to have renounced their liability as common carriers and assumed that of wharfingers, and they could be held liable only for actual negligence. (*Hyde* v. *Trent Nav. Co.,* 5 *T. R.* 397, *per Buller J. Gatliffe* v. *Bourne,* 4 *Bing.* 314. *S. C.* 1 *Scott, N. R.* 1, *and* 8 *id.* 604. *Abb. on Shipping, 5th Am. ed.* 463. *Gibson* v. *Culver,* 17 *Wend.* 305. *Goold* v. *Chapin,* 20 *N. Y. Rep.* 259, *per Strong, J. Hathorn* v. *Ely,* 28 *id.* 78.)

---
Ely *v.* New Haven Steamboat Company.
---

It is not contended on the part of the plaintiffs that there was any negligence on the part of the defendants.

It is, however, urged by the learned counsel for the plaintiff, that the defendants' liability as common carriers continued until after the loss of the goods, because according to the course of business referred to, a notice should have been given to the plaintiff of the arrival of the goods. As before intimated, where the contract in terms, or as affected by the usage of trade, is to deliver the goods at the wharf, notice is not necessary. It is not itself an act of delivery, or equivalent or even akin to it. It is a substitute for it arbitrarily created. There was perhaps enough evidence that the duty of sending a notice to the plaintiff's store of the arrival of their goods formed a part of the usage in this case, to require the submission of that question to the jury, if it had been material to the determination of the case. But we are of opinion that if the fact were so, the plaintiff's store having been closed the whole of the day on which the goods arrived, and until after the goods had been destroyed, the defendants were excused from giving the notice. Absence of the consignee dispenses with notice. (*Fisk* v. *Newton,* 1 *Denio,* 45. *Northrup* v. *Syracuse, &c. R. R. Co. supra.*) The defendants were under no obligation to go beyond the usage alleged, and seek the plaintiffs' elsewhere than at their store.

The fourth of July was not a holiday in any sense which affects this case.

The judgment should be affirmed.

[KINGS GENERAL TERM, February 10, 1869. *J. F. Barnard, Gilbert* and *Tappen,* Justices.]