WILLIAM REDMOND, Appellant, v. THE LIVERPOOL, NEW YORK AND PHILADELPHIA STEAMBOAT COMPANY, Respondent.

A common carrier by water is not discharged from all responsibility for the safety of the goods intrusted to him, by a discharge from the vessel at a proper place, reasonable hour, and upon due notice; the wharf or place of discharge, not having been selected by the owner or consignee for storing the goods.

As a general rule, if for any reason the consignee does not appear to claim the goods, or does not receive them, it is the duty of the carrier to provide a proper place of deposit; or, in case of imported goods, subject to duty, to see that they are in proper custody.

A consignee is entitled to reasonable time to remove the goods; and until such reasonable time has elapsed, they are at the risk of the carrier, who has no right to put them in store for the consignee.

The contract of the carrier is necessarily subject to the reveune laws, and his obligation does not require a delivery in contravention thereof. If the owner fails to comply with the laws, or after reasonable opportunity is given, omits to obtain the necessary authority to remove or receive the goods, and they are, in pursuance of law, delivered to and received by the proper officers, the carrier is discharged from further responsibility. But where the owner has obtained the requisite permit, the fact that the removal is under the supervision of an inspector of customs, does not affect the relation of the parties. The owner is entitled to an absolute delivery from the master of the vessel.

(Argued November 24th, 1871; decided December 5th, 1871.)

APPEAL from order of the General Term of the Supreme Court of the first judicial district, reversing a judgment entered in favor of plaintiff, and ordering a new trial.

The action is brought to recover the value of a box of merchandise, one of twenty-three boxes shipped on board defendant's steamer at Belfast, Ireland, to be transported to the city of New York.

The Edinburgh, one of the defendant's steamers, with a large miscellaneous cargo for different consignees, including the twenty-three cases for the plaintiff, arrived at the port of New York on the first of March, 1866. She commenced discharging on the sixth of March, at ten A. M., and continued doing so until six P. M. Resumed on the seventh at seven

A. M., and continued until six P. M. On the eighth began at seven A. M., and kept on until two A. M. the next day. On the ninth, from seven A. M. until three and a-half P. M. when, her inward cargo being all discharged, she commenced taking in her return cargo. She sailed again for Liverpool on the tenth.

The invoices for the respective consignees were not discharged separately and distinctly, but the goods came out promiscuously and irregularly as they were reached.

These cases were landed on a wharf or pier, No. 44, North river, leased by the defendant, and used by it exclusively. After being landed they were checked by Mr. Mills, acting in behalf of the ship, and also by a custom house officer in attendance, whose duty it was to direct where the goods should be sent, in accordance with the entry previously made, and the permit granted thereon.

The cases, including the missing one, had been entered for warehousing, and the bonded warehouse No. 286 Water street had been designated as the warehouse to which they should be sent.

The defendant had a delivery clerk, whose duty it was to superintend the delivery of all goods to the carman who carried them away from the pier. He occupied a little office outside of the gate, near the wharf. It was his general, if not uniform practice, to take receipts from the master carmen for the goods carted by them and their men as they left the pier.

He was furnished by the defendant with printed blank receipts, which he filled in with the marks and numbers of the packages put on the carts, and to these he took the signatures of the master carmen and filed them away. Such a receipt, dated March eighth and ninth, for twenty-two of the twenty-three packages he produced on the trial.

For the twenty-third case, No. 1,609, the case in dispute, he had no receipt.

At the close of the testimony the referee was requested by the defendant's counsel to find as follows:

1. That the case of merchandise in the complaint men-

tioned was discharged at a proper and reasonable time and place, at the city of New York, on due notice, and that such discharge was a full delivery according to law and the usage of the port of New York, as proved, and discharged the defendant from all responsibility therefor, which the referee declined to find, and defendant's counsel excepted.

2. That the said case of merchandise being foreign merchandise, received at this port, entered in bond by the plaintiff, was delivered on the wharf into the hands of the United States authorities, or placed under their custody or control, and that such disposition of such case was a sufficient delivery and discharge of this defendant of its obligations of the contract of carriage, which the referee declined to find, and defendant's counsel excepted.

3. That under the evidence presented, and the law applicable to this case, the defendant was entitled to a report and judgment in its favor, which the referee declined to find, and defendant's counsel excepted.

The referee found in his report, as matter of fact, that the defendant had failed to deliver to the plaintiff the box of merchandise in question, and that it was of the value of $971.88, and he found as a conclusion of law, that the plaintiff was entitled to judgment for the said sum, with interest.

To both of these findings defendant excepted.

Judgment was duly entered upon said report.

*H. Nicoll,* for appellant. The order not stating that the reversal was on questions of fact, only questions of law can be examined. (Code, § 248; *Baldwin* v. *Van Dusen,* 37 N. Y., 487; *Shibley* v. *Angle,* 37 N. Y., 626.) To relieve carriers from responsibility, notice must be given and a reasonable time for removal. (*Richardson* v. *Goddard,* 23 How. U. S., 25; see also *Ostrander* v. *Brown,* 15 John., 39; *Gibson* v. *Culver,* 17 Wend., 305; *Fiske* v. *Newton,* 1 Den., 45; *Gatliff* v. *Bourne,* 4 Bing. N. C., 321; *Same* v. *Same,* in Excheq. Ch., 3 Man. & Grang., 643; *Same* v. *Same,* House of Lords, 11

Clark & Fin., 45; *Norway Plains Co.* v. *Boston and Maine R. R.*, 1 Grey, 263.)

*J. W. Gerard*, for respondent.   Upon the deposit of goods at the usual wharf or other proper place, and upon reasonable notice of the arriving and unlading, a carrier by water is discharged from responsibility.   (*The ship Grafton*, Admiralty R., 43; *Fields* v. *Peacock*, Manuscript Decisions; *Kennedy* v. *Dodge*, 1 Bard. D. C., 311; *Cope* v. *Cordova*, 1 Rawle. Penn. R., 203; Edwards on Bailments, 532–534; Story on Bailments, §§ 544, 545; *Richardson* v. *Goddard*, 23 How. U. S., 28; Angell on Carriers, §§ 310, 311; *Northern* v. *Williams*, 6 La., 578; *The Norway* (reported 12 Law Times, N. S.), 57; *Ely* v. *New Haven Steamboat Co.*, 53 Barb., 207.) The goods were delivered to the custom-house receivers, and they and not defendant were bound to account for them. (Laws of U. S., of Aug. 6, 1846, vol. 9; U. S. Stat. at Large, 53; Law of March 28, 1854, vol. 10, p. 270; *Harris* v. *Devine*, 3 Peters, 292.)

ALLEN, J.   The Supreme Court has reversed the judgment entered upon the report of the referee and ordered a new trial.   As it is not stated in the judgment of reversal, that it was on questions of fact, the judgment must be deemed to have been reversed on questions of law, and the facts are not open to review in this court.   (Code, §§ 268, 272; *Baldwin* v. *Van Deuzen*, 37 N. Y., 487.)   The referee has found that the defendants, as common carriers by water, received the plaintiff's merchandise at Belfast, Ireland, to be carried from there to New York, and there delivered to the owner, the bill of lading exempting the carriers from certain risks, by none of which were the goods lost; that the vessel in which the goods were shipped arrived at her port of destination having the goods on board, and that twenty-two of the twenty-three cases were delivered to the plaintiff, and that the defendants failed to deliver the remaining case or box.

Upon these facts, if there was nothing to detract from their force, or excuse the defendants, the plaintiff was entitled to judgment for the value of the missing case.

It was not claimed in the answer, and the referee was not requested to find upon the evidence, that there was an actual delivery to the plaintiff or his agent, but it was claimed that the duty of the carrier was fully performed, so as to discharge the company from liability as such carrier, without such actual delivery to and receipt by the owner and consignee; and the questions for consideration here are presented by three requests to the referee, and his refusal to find and decide as requested. The third of the propositions is very general, and presents no specific question of fact or of law. It is, that under the evidence presented and the law applicable to this case, the defendant was entitled to a report and judgment in its favor. A request, in this form, is equivalent to and presents no other question, than is presented by the exception to the general conclusions of law of the referee adverse to the defendant; and as that is fully warranted by the findings of fact, and they are, in turn, supported by the evidence, and not controverted by the defendant, the request and exception to the refusal need not be farther noticed. The counsel should have specified some fact or facts to be found, or rules of law to be adjudged; that is, called the attention of the referee to the facts claimed to have been proved, or the particular legal principle intended to be presented for decision to entitle the defendant to any benefit from it's request. To give effect to a request so general, would establish a rule to operate as a trap and a snare to suitors, as well as to courts and referees. The first request was, that the referee should find that the case of merchandise, in the complaint mentioned, was discharged at a proper and reasonable time and place, at the city of New York, on due notice; and that such discharge was a full delivery according to law, and the usage of the port of New York as proven, and discharged the defendant of all responsibility therefor. This request, in the form in which it was made was properly denied, even if it be con-

ceded that the facts alleged were incontrovertibly proved.   A
discharge from the vessel at a proper place, seasonable hour,
and upon due notice to the consignee, does not discharge the
carrier from all responsibility for the safety of the goods.   It
may, under some circumstances be regarded as a delivery to the
consignee, and a performance of the contract of affreightment,
so as to discharge the ship owner from the stringent liability
of a carrier, but such cases are exceptional, and as a rule, if
for any reason the consignee does not appear to claim the
goods, or does not receive them, it is the duty of the carrier
to provide a proper place of deposit, or in case of imported
goods, subject to duty, to see that they are in proper custody.
The general rule is, and to it there are no recognized excep-
tions, if the consignee is unable or refuses to receive the
goods, the carrier is not at liberty to leave them on the
wharf, but it is his duty to take care of them for the owner.
(Story on Bailments, § 545; *Ostrander* v. *Brown*, 15 J. R.,
39; *Mayell* v. *Potter*, 2 J. Cas., 371; *Fisk* v. *Newton*, 1
Den., 45.)   Judge GRIER, in *Richardson* v. *Goddard* (23
How. U. S. R., 28), which was an action for the non-delivery
of cotton at Boston, shipped at Appalachicola, used this lan-
guage: " When goods are not accepted by the consignee the
carrier should put them in a place of safety; and when he
has so done, he is no longer liable on his contract of affreight-
ment."   It follows that until this is done the liability of the
carrier continues.   (And see 2 Kent's Comm., 605.)   If it
be conceded that a carrier by water may discharge himself
from liability, by delivering merchandise upon a wharf, with
notice to the consignee, the latter is entitled to a reasonable
time to remove them, and they are at the risk of the carrier
until a reasonable time for such removal has elapsed; and a
right to put the goods in store for the consignee does not
exist until the latter has had a reasonable time for their
removal.   (*Price* v. *Powell*, 3 Com. R., 322.)   It was doubted
in the case cited, whether a local custom might be shown in
exoneration of the carrier, by which the delivery was com-
plete, by landing merchandise on the wharf.

The request to rule that the carrier was exonerated from liability by depositing the goods on the wharf, and before the consignee had time to receive them, was properly refused. A mere deposit of the goods by the defendants on their own wharf, without acceptance by the consignee, not separated and set apart from the residue of the cargo, and without a reasonable opportunity, and time for their removal, did not discharge the defendant, and they remained at the risk of the carrier, under all the circumstances suggested in the request as having been proved and established on the trial. Other circumstances not claimed to have been proved were necessary to relieve the defendant from liability as carriers. *Cope* v. *Cordova* (1 Rawle., 203), decided in 1829, is relied upon as sustaining the position of the defendant, and the syllabus of the case, as prepared by the reporter, goes the full length of the doctrine contended for. It is as follows : The master of a vessel arriving at the port of Philadelphia from a foreign port, is not bound by the bill of lading, to deliver the goods personally to the consignee. The liability of the ship-owner ceases when the goods are landed at the usual wharf. The first proposition, that a personal delivery to the consignee is not required, is correct. The other part of the statement, is not warranted by the judgment of the court, and should be essentially qualified and modified. The action came before the court upon a writ of error, upon a case stated. A ship arrived at Philadelphia from Liverpool with ten crates of iron for the plaintiff, all of which but one, were received by the plaintiff. The ten crates were entered by the plaintiff at the custom-house, and the plaintiff sent a porter with a custom-house permit and authority to receive the goods. The porter delivered the permit to the inspector on board the ship and asked for the goods. On three different days one or more of the crates were received by the plaintiff. The porter did not attend at the wharf the whole of the days, but called repeatedly during the days and inquired of the inspector for the crates, and took them away as received. The last

crate was landed on the wharf on one of these days, but was not received by the porter. The usual custom and practice followed, in unloading vessels at that port, was stated. In giving judgment, the court referred to the customs at certain foreign ports, as stated by authorities, and the custom at Philadelphia, and that inquiry had been made among merchants, and that the result of the inquiry was, that theretofore goods when landed had been considered at the risk of the consignee, and that the general understanding had been, that the liability of the ship-owner ceased upon the landing of the goods at the usual wharf; but the decision is finally made to rest upon the proposition that if, under the circumstances stated, the goods were lost, it was in consequence of the plaintiff's own negligence, or that of his servant. The case was decided upon its peculiar circumstances, and upon the ground of the neglect of the plaintiff, and is not an authority for any general principle.

*Richardson* v. *Goddard* (*supra*), is authority for the rule, that when the master of a vessel delivered the goods at the place chosen by the consignees, at which they agreed to receive them, and did receive a large portion of them, after full and fair notice, and the master deposited them for the consignees in proper order and condition at midday, on a week-day, in good condition, it was a good delivery, according to the general usages of the commercial and maritime law. The rule is carefully guarded, and comes far short of the request made by the defendant. The facts, as stated, were held to constitute a good delivery to the consignees. The goods were not delivered at the wharf of the carriers, or at a wharf at which they intended to discharge the cargo, but at another wharf selected by the consignees, and for their convenience. The cotton had been placed on the wharf at the disposal of the consignees, and with their knowledge, and they had removed a part of it, and postponed the removal of the residue, for reasons which the court held insufficient, for more than twenty-four hours after the unloading was completed, when the cotton was destroyed by an accidental fire.

The consignees had hindered the discharge of the cargo, by their prior neglects to remove that which had been placed on the wharf, and received repeated notices from the master to remove the cotton.

This case does not come within the principle of that decision. Here the goods were on the defendant's wharf, not separated and set apart for the consignees, there was no neglect in their removal, and they were not casually destroyed.

*Ely* v. *N. Haven Steamboat Co.* (53 Barb., 207), was decided on its own peculiar circumstances, as was *Cope* v. *Cordova* (*supra*). The delivery upon the wharf in that case, and in reference to the course of business between the parties, was held to be a delivery to the consignee, exonerating the carrier. The court says: "The evidence clearly establishes a course of business between the parties, in relation to the mode of delivering goods, which must govern the liability of the defendants in this case." *Gotliff* v. *Brown* (4 Bing. N. C., 314; S. C., in Exch. Ch., 3 M. & G., 643; and in the House of Lords, 11 Clark & Fin., 45), although not precisely analogous to this case, as there the goods were destroyed by a casual fire, and here they have been misdelivered or wrongfully taken, is, nevertheless, an authority directly hostile to the claim of the defendant, and sustains the refusal of the referee to decide, as requested, that a discharge upon the wharf exonerated the carrier. To a declaration on a contract for the carriage of goods from Dublin to London, and a delivery at the port of London to the plaintiff or his assigns, a plea that, on the arrival of the vessel at London, the goods were deposited on a wharf, there to remain until they could be delivered to the plaintiff, the wharf being a place where goods from Dublin were accustomed to be landed, and fit and proper for such purposes, that before a reasonable time for delivery elapsed, they were destroyed by fire, which broke out by accident, was held bad.

There was no sufficient evidence of a custom or usage in New York which, under such circumstances, would release the carrier from further liability, and place the goods at the

risk of the owner. It is not necessary to consider whether such a custom, if proved, could vary the contract of the parties.

The other request was, that the referee should find and decide that the merchandise, being foreign merchandise, entered in bond by the plaintiff, was delivered on the wharf into the hands of the United States authorities, or placed under their custody or control, and that such disposition was a sufficient delivery and discharge of the defendant from the obligations of the contract of carriage.

The control which the law gives the revenue officers over foreign merchandise, brought into the ports of the United States, has nothing to do with the contract between the ship-owner and the consignee or owner of the goods.

The promise of the carrier is, necessarily, subject to the revenue laws of the country, and his obligation does not require a delivery in contravention of the laws, but when and as those laws permit, and to the party entitled. It may well be that, if the owner fails to comply with the laws, and cannot lawfully land or remove the goods, and they are seized and taken by the officers of the government, or if, upon the omission of the owner, after a reasonable opportunity is given him for that purpose, to obtain the necessary authority to remove or receive the goods, they are, in pursuance of law, delivered to and received by the proper officers, in other words, placed in the custody of the law, the carrier would be discharged from further responsibility to the merchant. It would be equivalent to a storing of the goods, under circumstances authorizing the master of the vessel to store them for the owner. But such is not this case. The owner did obtain a permit to land the goods, to receive them from the carrier, and remove them to a particular place of deposit, a designated bonded warehouse. That the removal was under the supervision of an inspector of customs, whose duty it was to see that goods were not removed in fraud or evasion of the revenue laws, or taken to places not authorized by law, did not at all affect the relation of the parties to the action, or their

duties and liabilities.  Such of the goods as were taken were received and taken by the plaintiff, and, under the permit, he was entitled to take all.  He was entitled to an absolute delivery from the master of the vessel; but the fact that his possession, as between him and the United States, was a qualified possession, did not affect the transaction with the defendant.

There is no evidence in the case, tending to show that the custom-house officers had, or had authority to take, the possession or control of the goods, or prevent the delivery to the plaintiff to be taken by him to the warehouse.  It would have been no answer to a demand by the plaintiff of the goods, that the duties were not paid, that they were entered in bond, and that an inspector of customs was present to watch their landing, and see that they were carried away by proper persons, and to a proper place of deposit.  The inspector did not assume to, and had no legal right to interfere with the delivery of the merchandise to the plaintiff under his permit.  He might direct the mode of delivery so far as essential to prevent frauds upon the revenues, but this was the extent and limit of his duties and powers.

The delivery of the goods by the ship-owners or their agents was regarded as a transaction with the plaintiff, and not with the United States officers, except as they might prevent a delivery as authorized by law.

The case was well decided by the referee, and the order granting a new trial must be reversed, and the judgment on the report of the referee be affirmed.

All concur.

Judgment accordingly.