[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 42 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 43 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 44 
The defendant was a common carrier by vessel, on sea, of goods consigned to one not the owner thereof. As such he was not bound to deliver the goods of the plaintiffs to the consignee thereof in person, nor at his warehouse. (Richardson v. Goddard, 23 How. U.S., 28.) He might land them at a wharf at the port of destination. (Chickering v. Fowler, 4 Pick., 371.) But before unlading there, he must give the consignee due notice of their arrival and unlading, and yield him a reasonable time, after notice given, to take charge of and secure them. (Ostrander v.Brown, 5 Johns., 39; 23 How., supra.) And if the consignee did not appear to claim the goods, or did not receive *Page 46 
them, or if he was unable or refused to receive them, the carrier was not at liberty to leave them on the wharf, but it was his duty to take care of them for the owners. (Id.; Redmond v.Liv., N.Y. Phil. St. Co., 46 N.Y., 578.) These rules and others noticed herein, applied to the facts of this case, determine it adversely to the defendant.
There is no question here but that there was due notice to the consignee of the arrival of the goods in port; nor but that there was due notice of the wharf chosen for the unlading of them; nor is there any question but that all the packages came into the actual possession of the consignee.
The questions are, was the notice of the time of the unlading such as was reasonable; and was the landing of these goods made in a proper state of the weather; and did the carrier perform his whole duty in the care he took of them after they were landed?
The question as to notice of the day of unlading is to be determined by a consideration of the facts which occurred on the nineteenth and twentieth days of September. For though the consignee had been notified of the arrival of the goods in port for several days before either of those dates, yet the precise day of unlading had been deferred by the carrier himself until after the nineteenth. He had been requested to land them on that day but declined. He on that day selected the twentieth as the day for discharging them, if it should be a fine day, and then notified the consignee that the goods would be unladen on the twentieth if it should be a fine day. There was much importance attached by the consignee to the character of the day, whether fine or not. And very properly so. The goods were perishable, and liable to be damaged by rain falling upon the packages. Of this the carrier had been informed, and had consented to adapt his action to this circumstance. So that it was an important part of this notice for the twentieth, that it was conditional upon that day being fine. And by the force of what had taken place between the parties, each undertook to judge for himself in that respect. And for a mistake therein, the one making it was alone liable *Page 47 
And the result was this: If in fact the day was fine, then the consignee had notice, and the unlading might go on; but if in fact the day was not fine, then though the carrier might if he chose unload, he did so at his risk of any damage to the goods.
We are brought by the findings of the learned referee, and by the evidence in the case, to the conclusion that the day was not such as to put the consignee in the position of having had notice that the unlading was to take place on it; that it was not fine.
It was raining until nine o'clock in the forenoon, and there had thrice been thunder and lightning, once as late as eight o'clock in the forenoon. Rain fell again at about half-past two in the afternoon, and from half-past four in the afternoon it fell during the rest of the day and night.
But without further or other notice to the consignee, the carrier began at nine o'clock to discharge the goods, and so continued until noon when the consignee was informed thereof. At that time, however, nearly all the packages had been placed upon the wharf, and they were all placed there before two o'clock in the afternoon.
The latter notice to the consignee was not a reasonable notice. For he was not at liberty to remove the goods before they had been weighed by a United States officer, to be sent for that purpose from the custom-house. This officer did not reach the place until half-past two o'clock in the afternoon. And though the consignee used extraordinary diligence and employed a large number of carts, he was unable during that day to secure the property from harm.
The conclusion of law of the learned referee is well founded, that the defendant landed the goods without reasonable notice to the consignee, sufficient to enable him to cause the same to be weighed, transported and protected against injury by the weather.
And as the carrier had knowledge of the perishable character of the goods, and that the consignee had far to cart them, and is, under the circumstances chargeable with the *Page 48 
state of the weather on the day of unlading, the conclusion of law of the learned referee is well founded, that the defendant landed the property on the dock with a knowledge of its perishable character on a day unsuitable to the landing and transportation of such goods. Nor is there any finding nor any evidence that the defendant, after the property was discharged from out of the ship, did anything to keep it from harm, or that he did anything to aid the consignee to that end, other than to separate it on the wharf from the property of others. If no notice had been given of the arrival of the vessel, and of the readiness to unload, then the mere unlading the goods on a suitable wharf, even if the time had been suitable, would not have been equivalent to an actual delivery. (Gatliff v.Bourne, 4 Bing., N.C., 314; S.C. House of Lords, 11 Cl. Fin., 45; and 3 Man. Gr., 643.) We have already stated, that though the consignee had notice of the arrival of the vessel, yet all which took place between him and the carrier, as to notice of the actual unlading, brought the matter to the same point as if he had had no notice of arrival. For he was not prepared to avail himself of the actual discharge of the goods on the forenoon of the twentieth, because he knew not that they were then to be unladen. Hence he and the carrier fall within the rule of the case just cited. And if, after the discharge of goods has been had, notice thereof be given to the consignee, then he is entitled to a reasonable time thereafter in which to go or send to the wharf to receive the goods and take them away. (SalmonFalls Man. Co. v. The Tangier, 1 Clifford, 396.) When then, at noon of the twentieth, notice was given to the consignee that the discharge of the goods had commenced, he was still entitled to a reasonable time, which as we have seen he did not have. And as, if the consignee not being the owner be unwilling or unable to take charge of the goods, the carrier still remains charged with the duty of saving them from harm, though they be put out of the ship on to a proper wharf (46 N.Y., supra); so though the consignee be willing and doing his best endeavor to take charge *Page 49 
of and remove the property, if he have not time so to do by reason of insufficient notice, the carrier is not relieved from his obligation to care for the goods and save them from damage. And, sustained by these established principles, the conclusion of law of the learned referee is well founded, that the defendant was guilty of negligence and of a breach of his obligation and duty as carrier of the goods.
It is urged, however, an officer from the custom-house being on board the ship, in the discharge of his official duty to care for the lawful unlading of the cargo, that he was a person authorized to receive the goods, and that a discharge with his knowledge and assent was such a delivery as relieved the defendant from his liability as a carrier.
It was held otherwise by us, after due consideration, inRedmond v. Liv., N.Y. Phil. St. Co. (supra), and we adhere to the decision there made.
It is also urged, that a judgment against the defendant holds him liable for the distance of the U.S. bonded warehouses from the wharf at which his vessel lay. But this certainly enters into the question of reasonable notice and of reasonable time; inasmuch especially as the defendant was apprised of the distance for which the goods were to be carted after delivery should be made to the consignee. For whether notice is reasonable or not, depends upon whether or not it gives to the consignee time enough, under all proper and ordinary circumstances, to provide for the care and removal of the goods. To be sure, the consignee cannot choose an unusual, out of the way and far distant place of storage, and insist that the notice shall be given and the time shall be allowed for transportation thither. No more so, than that the carrier can select a wharf as much inconvenient for the consignee and hold him to usual dispatch. But where the consignee proceeds in the ordinary mode of those engaged in the same business, he is entitled to time enough to take charge of the property, and remove it in due course to a safe shelter, before the carrier can desert it unprotected upon the place of landing. *Page 50 
There is nothing in the findings nor in the evidence showing that the action of the consignee was unusual in the use of the warehouses chosen by him or allotted to him.
It is claimed that the referee erred in declining to make certain findings of fact as requested by the defendant.
1st. It is true that there was testimony that the barometer was consulted by the defendant's agent, and that it was rising when he began to unlade and while he was unlading. This did not countervail the other facts which appeared. The movements of the barometer could not disprove the falls of rain. They were but indications; and if the defendant relied upon them he relied upon them for himself, and not for the plaintiffs.
2d. The referee found as to the rain at thirty-seven minutes past two o'clock P.M. in exact accordance with the evidence agreed upon by both parties.
3d. It was immaterial that the landing of the goods was under the superintendence of a United States custom-house inspector.
4th. And so, that the licorice, when landed, was placed separate from other goods. The liability of the defendant does not depend upon the contrary.
5th. The referee did find that neither party protected the cases, 170 in number, which remained on the wharf during the night. He found, also, that the consignee used extraordinary diligence to remove the property. But it was immaterial that he did not provide covering for it while on the wharf or during the transit. Had he neglected to do so, and that have been found by the referee, it would not have relieved the defendant from his liability. That was not ended until he had made complete delivery; and that was not effected without an unlading on a notice of time and place, which gave reasonable time for safe removal.
We do not think that the referee erred in declining so to find, so as to vitiate his judgment.
The questions put to the witnesses by the defendant, as to the alleged usage at the port of New York, were properly *Page 51 
disallowed. They were improper in form and extent. They called for a conclusion of law, and not matter of fact. The referee assented to the putting of a question as to the fact of a usage. The answers to the questions put, if responsive, would have stated not only the usage, but its legal effect upon the relations of the parties.
The learned counsel for the defendant has cited many cases, some of which he much relies upon as closely analogous to and decisive of this. We do not so read them. Cope v. Cordova (1 Rawle, 203) is fully commented upon in 46 N.Y. (supra), and shown to be a case resting entirely upon its own facts, and as establishing no general principle; and the same is true of Ely
v. N.H. St. Co. (53 Barb., 207); which case, moreover, was substantially overruled in Russell Manufacturing Co. v. N.H.St. Co. (50 N.Y., 121). And it is to be observed, further, that, in Cope v. Cordova, the case of perishable articles, which may be landed to the great detriment of the consignee at improper times, is said to be beside the question there considered; and that such special case, when it should arise, would be decided on its own circumstances. The case of The Tangier (1 Clifford,supra), we have cited to show that where no notice is given until cargo is discharged the carrier is not relieved until a reasonable time has been accorded to the consignee to take charge of it. And that case goes upon the principle, which the facts of it sustained, that the carrier acted pursuant to a full and reasonable notice to the consignee, and did unlade at a suitable place and time in compliance with that notice; and it holds that the carrier must give such reasonable notice of those facts to the consignee as will enable him, in the usual course of business, to receive and take away the goods.
The case of The Grafton (Olcott Adm'y Reps., 43 [S.C.], 1 Blatchf., 173) is much relied upon by the defendant. But this case starts with the annunciation of the rules we have laid down. It assumes (p. 46) that due notice was given to the consignees by the ship of the time and place of unlading; *Page 52 
for without reasonable notice (the decision asserts) it is clear the ship would not be discharged of her responsibility by placing the goods on the wharf. A carrier by water (it continues) cannot leave or abandon, in an unprotected state, goods under his charge, even though there be an inability or refusal of the consignee to receive them.
The learned judge seems to have put his decision very much upon the usage of the port. He says: "I think that the result of the cases is that, in a well settled course of trade, as it is inthis port in relation to coasting vessels, a delivery of a cargo on the dock here, with notice to the owners of the time and place of unlading, places the goods at their risk, and discharges the ship from its liability as a common carrier." But even then, he adds, "although, in the case of a naked consignment, the ship might be under the further obligation to secure the property after it was unladen, if no consignee appeared or he refused to accept the goods." And he says that he does not discuss the point debated at the hearing, as to the liability of the ship if she discharges perishable goods in hazardous or improper weather, against the consent of the owners; and notices the intimation inCope v. Cordova (1 Rawle, supra), that such a circumstance might take the case out of the ordinary rules, and fasten the loss on the vessel.
The case does not lay down a general rule differing from those which we have here adopted. And if there is a difference in the application of the law, it is that the state of facts is different.
The defendant strenuously contends that there is a difference in the obligation as to delivery between a carrier by sea and a carrier by inland water; and that less is exacted of the former. He cites cases such as Hyde v. Trent. Nav. Co. (5 Term R., 389), where BULLER, J., says: "A ship, trading from one port to another, has not the means of carrying goods on land; and, therefore, according to the established course of trade, a delivery on the usual wharf is such a delivery as will discharge the carrier." But this language must be *Page 53 
understood in the courts of this country with the qualification that due and reasonable notice thereof is given to the consignee. (Story on Bailm., § 545; 2 Kent's Com., p. 605, and note c.) With such qualification, the language quoted will apply to carriers by sea or on inland waters; and the obligation is the same in each case.
It needs not that we go over all the cases cited. We are sure that we assert no rule here that is not in accordance with the principles of the decisions made upon a state of facts, the same or like as that here presented.
The judgment appealed from must be affirmed, with costs to the respondent.
All concur.
Judgment affirmed.