THE

# New York Supplement

## VOLUME 96.

AND

# New York State Reporter,

## VOLUME 130.

(109 App. Div. 230)

### BECKER et al. v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, Fourth Department.   November 29, 1905.)

1. CARRIERS—TERMINATION OF RELATION—ARRIVAL OF GOODS AT DESTINATION—
NOTICE TO CONSIGNEE.
      After the lapse of a reasonable time for the consignee to remove the
goods after he 'has been given notice of their arrival at their destina-
tion, the liability of the common carrier as such ceases, and its liability
thereafter, if any, is that of a warehouseman.
      [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 609.]

2. SAME—LIABILITY AS WAREHOUSEMAN.
      A carrier does not necessarily relieve itself from all liability by giving
the consignee timely notice of the arrival of the goods, although the latter
fails to remove them within a reasonable time; and it will still be liable
if, after it has fully discharged its duty as carrier, it negligently suffers
the goods to be damaged or injured.
      [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 609,
625.]

3. SAME—DUTIES OF CARRIER—UNLOADING OF CARS.
      Where a contract for the shipment of evaporated fruit provided that
property not removed by the consignee within 24 hours after its arrival
at destination might be kept in the car at the sole risk of the owner, the
carrier, after notifying the consignee of the arrival of the fruit, was not
bound to unload the fruit, and put it in cold storage, to await the con-
signee's pleasure and convenience, and was not negligent in leaving the
fruit in the cars for several days.

4. SAME.
      A carrier was not negligent in failing to unload semiperishable evapo-
rated apples after notifying the consignee of their arrival at destination,
in the absence of evidence that it knew, or in the exercise of reasonable
diligence should have known, that the apples would have been in better
condition if unloaded.
      96 N.Y.S.—1

5. SAME—CONTRIBUTORY NEGLIGENCE OF CONSIGNEE.

Where a contract for the shipment of semiperishable evaporated apples provided that, if the fruit was not removed by the consignee within 24 hours after its arrival at destination, it might be kept in the car at the sole risk of the owner, and the consignee was promptly informed of the arrival of the fruit at its destination, and knew the character of the fruit, the weather conditions, and the provisions of the contract of shipment, but failed to unload the fruit for several days, made no effort to protect it, and did not complain as to its being kept in the car, although fully informed thereof, he was guilty of such negligence as to preclude a recovery from the carrier for injury resulting to the fruit from being left in the car.

Appeal from Trial Term, Monroe County.

Action by De Witt C. Becker and another against the Pennsylvania Railroad Company. From a judgment for plaintiffs, defendant appeals. Reversed.

The action was commenced on the 3d day of July, 1903, to recover damages which the plaintiff claims to have sustained because of the alleged neglect of the defendant to properly "care for, store, and protect" three car loads of evaporated apples belonging to them, which were delivered to the Chesapeake & Ohio Railway Company for shipment to Jersey City, and from it received by the defendant; it being a connecting railroad.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Frank Rumsey, for appellant.

Merton E. Lewis, for respondents.

McLENNAN, P. J. The plaintiffs, who were copartners, delivered three car loads of evaporated apples, containing about 500 boxes each, to the Chesapeake & Ohio Railway Company at Staunton, Va., for shipment to Jersey City, over its railroad and connecting lines, one of which was the railroad of the defendant which extended to said city. One of the cars left Staunton on September 30, another October 1, and the third October 8, 1901. On what dates they were received by the defendant, or at what point on its railroad, does not appear. The cars containing the apples arrived, however, at defendant's pier in Jersey City, the terminal of its railroad, where its yard and tracks are located, as follows: The first car, which left Staunton September 30th, arrived October 3d, the second, shipped October 1st, on October 8th, and the third car, which left Staunton October 8th, reached defendant's pier October 12, 1901; the first and third cars having been in transit four days and the second seven days. Notice of the arrival of each car was immediately given by the defendants to the plaintiffs by mail at Fairport, N. Y., their place of residence, which notices they received in due course. They, however, did not claim or seek to take possession of the property until some time in the month of January following, when they removed it from defendant's pier. On the 16th or 17th of October, 1901, one Jacobson, a witness called by the plaintiffs, for them or by their authority examined the apples in the car which arrived October 3d, the one that left Staunton first, and found that the apples were then damaged, were slightly fermented, had com-

menced to turn in color, and were heated. Three or four days afterwards he examined the car load which arrived October 8th, and three of four weeks later examined the apples in the last car, and which reached its destination October 12, 1901. The witness testified:

"The second car I found the same as the first; all three of them the same way. * * * My examination of the third car showed the condition to be about the same as the other two cars, slightly fermented and off color."

The witness testified, in substance, that when he made such examinations, he knew that the damaged condition of the fruit was due to the fact that it had been allowed to remain in a closed car during hot weather. Presumably, Jacobson reported the result of his examination to the plaintiffs, for whom or by whose authority he was acting. Yet they made no effort to better the conditions in which the apples were found to be, made no complaint, gave no indication that they were not entirely satisfied with the manner in which their property was being cared for. The apples remained in the cars, those in one car for 10 days, in another for 13 days, and in the third 57 days after their arrival, when they were unloaded onto the pier, each carload forming a separate or distinct pile, and they so remained until some time in January, 1902, when they were received by the plaintiffs, and caused to be removed. There is no evidence tending to show that the apples were not in practically the same condition in January, when they were received by the plaintiffs, as they were when they were examined by the witness Jacobson, except about 100 cases, which were injured by salt water, to which reference will be made. In fact, the samples of the apples taken by Jacobson when making such examinations were the basis of the testimony given by plaintiff's witnesses as to the value of the apples in their damaged condition. In fact, we do not understand that it is claimed by the respondents that the damaged condition of the apples resulted from anything which occurred, or from any conditions which existed, subsequent to their removal from the cars, except as to the 100 cases before mentioned. The evidence also fails to show either that the condition in which Jacobson found the apples was due to the fact that the apples were permitted to remain in the cars a few days after their arrival in Jersey City, or that such damage did not result while the apples were in transit; two of the cars being upon the road four days and one seven days, it appearing that during such period the temperature was practically the same as it was after their arrival in Jersey City. It will be remembered that the apples in each car at the time they were examined, although there were several weeks intervening between the examination of the first and the last car, were all found to be in practically the same condition—one car load no worse and no better than another. It would therefore seem to be the merest speculation to say that the condition complained of resulted because the apples were permitted to remain in the cars after arrival in Jersey City, and before they were unloaded upon the pier, rather than during the period the defendant sustained the relation of common carrier.

The defendant was not liable as common carrier to the plaintiffs in this case for the damages sustained by them. In fact, it is practically

conceded by the respondents that such liability does not exist. As stated by the referee in an opinion:

"They [the plaintiffs] concede that the transportation was perfectly made from Staunton to Jersey City, and that the liability of the defendant as common carrier ceased upon its notifying the plaintiffs of the arrival of the shipments at destination. They seek to recover solely on the liability of the defendant as a warehouseman."

It is well settled, as stated by the learned referee, that after the lapse of a reasonable time for the consignee to remove the goods after he is given notice of their arrival at their destination, the liability of the common carrier as such ceases, and if it is responsible thereafter it is as a warehouseman. Tarbell v. Royal Exch. Shipping Co., 110 N. Y. 170, 17 N. E. 721, 6 Am. St. Rep. 350. In that case the court (page 180, of 110 N. Y., page 724, of 17 N. E., 6 Am. St. Rep. 350) said:

"But a delivery which will discharge the carrier may be constructive and not actual. To constitute a constructive delivery, the carrier must, if practicable, give notice to the consignee of the arrival, and when this has been done, and the goods are discharged in the usual and proper place, and reasonable opportunity afforded to the consignee to remove them, the liability of the common carrier, as such, terminates. The duty of the consignee to receive the goods is as imperative as the duty of the carrier to deliver. Both obligations are to be reasonably construed, having reference to the circumstances. The stringent liability of the carrier cannot be continued at the option or to suit the convenience of the consignee. The consignee is bound to act promptly in taking the goods, and if he fails to do so, whatever other duty may rest upon the carrier in respect to the goods, his liability as insurer is by such failure terminated. Redmond v. Liverpool Co., 46 N. Y. 578, 7 Am. Rep. 390; Hedges v. Hudson River R. Co., 49 N. Y. 223."

The common carrier, however, does not necessarily relieve himself from all liability by giving timely notice to the consignee of the arrival of the goods, even although he fails to remove them within a reasonable time. "If the consignee neglect to accept or to receive the goods, the carrier is not thereby justified in abandoning them, or in negligently exposing them to injury. If they are not accepted and received when notice is given of their arrival, he may relieve himself from responsibility by placing the goods in a warehouse for and on account of the consignee; but so long as he has the custody, a duty devolves upon him to take care of the property and preserve it from injury." Scheu v. Benedict, 116 N. Y. 510, 22 N. E. 1073, 15 Am. St. Rep. 426, and cases cited. If the goods had been stolen while in defendant's custody because of its negligence, clearly it would have been liable. Tarbell v. Royal Exch. Shipping Co., supra. If the property had been destroyed by fire through defendant's negligence, notwithstanding it owed no duty in respect to them as common carrier, it would likewise have been liable. Draper v. D. & H. C. Co., 118 N. Y. 118, 23 N. E. 131. Under all the authorities, if, after the defendant had fully discharged its duty as common carrier, it negligently suffered plaintiffs' goods to be damaged or injured, it would be liable. So that the question arises, does the evidence tend to establish negligence on the part of the defendant? What did it do or omit in the premises that would not have been done or omitted by a person of ordinary care and prudence? Was it negligent because it failed to unload the apples from the cars onto the

pier within 10, 13, or 57 days after it had notified the plaintiffs of their arrival?  There is no evidence tending to show that it was the custom of the defendant, or of any other railroad company, to so unload such goods under like circumstances.  It had a right to expect from day to day that the plaintiffs would remove the same, or give instructions respecting them.  A provision of the bill of lading which constituted the contract of shipment between the parties provided:

"Property not removed by the person or party entitled to receive it within twenty-four hours after its arrival at destination may be kept in car, vessel, depot, or place of delivery of the carrier at the sole risk of the owner of said property, or may be, at the option of the carrier, removed and otherwise stored at the owner's risk and cost, and there held subject to lien for all freight and other charges."

With such provision in the contract of shipment, we think the defendant was not negligent in omitting to unload the cars in question. Again, there is no evidence which shows or tends to show that the defendant knew, or in the exercise of reasonable diligence ought to have known, that the apples would have been in better condition if taken from the cars and placed in piles upon the pier.  The fact that the goods were evaporated apples, and were semiperishable, in no manner tended to establish the fact.  But again, the plaintiffs knew that by the terms of their shipping contract the property "may be kept in the car" at their sole risk after being notified of its arrival, and therefore it must be presumed they knew the apples would be so "kept in the car" unless the defendant was otherwise instructed.  No instructions having been given, was the defendant negligent because it failed to store the goods in a manner different than provided?

We conclude that the case is utterly barren of facts which indicate actionable negligence on the part of the defendant.  We are also of the opinion that the plaintiffs were guilty of such negligence in the premises as would bar a recovery upon the major part of the claim. They knew the character of the goods shipped, the weather conditions, and all the circumstances, including the provisions of the bill of lading.  They were promptly informed of the arrival of the goods at their destination, and yet made no effort to protect them, and did not suggest there was danger of injury in case they were kept in the cars, as the shipping contract provided might be done, and made no complaint as to the manner in which the defendant was caring for the goods, although being fully informed in that regard.  Under such circumstances, we think it clear that the negligence of the plaintiffs, their inattention and failure to observe the plain provision of the bill of lading, was quite as potential in bringing about the loss as any acts or omissions of the defendant.  "The duty of the consignee to receive his goods is as imperative as the duty of the carrier to deliver." Tarbell v. Royal Exch. Shipping Co., supra.  There is no force in the suggestion that the defendant, in the exercise of ordinary care and prudence, should have placed the fruit in cold storage to await the pleasure or convenience of the plaintiffs.  It had the option to do so, and thus might have relieved itself of all responsibility in the premises. No custom or course of business is shown which would impose such obligation on a common carrier.  If a train load of peaches or grapes

is delivered to a common carrier for shipment to a consignee in one of our cities or villages, and he is promptly informed of the arrival of such consignment, and he neglects or refuses to receive the same, the carrier is not under the obligation to place the same in cold storage, but may, especially where the contract, as in this case, provides the goods may be kept in the cars, so permit them to remain until called for by the consignee without incurring any liability therefor.

Upon the main controversy in the case, we think the evidence fails to establish a cause of action in plaintiffs' favor, first, because the proof does not indicate with any degree of accuracy that the defective condition of the apples did not occur while the defendant sustained the relation of common carrier to the plaintiffs, and without any fault on its part as such; second, because the evidence fails to show negligence on the part of the defendant as warehouseman; and, third, because the evidence clearly shows that the injury sustained by the plaintiffs was the result of their own negligence and inattention, and the failure on their part to observe the plain provision of the bill of lading—the shipping contract.

There is a question of fact presented by the evidence as to the damage done to 100 cases of the apples while on defendant's pier, and which were flooded by salt water. It is claimed that such damage resulted from an unprecedented rise of tide, and such as the defendant could not have reasonably anticipated. Upon the whole evidence, we think the question of defendant's negligence in that regard was one of fact.

It is considered unnecessary to discuss the other questions presented by this appeal. We conclude that the judgment should be reversed, and a new trial granted, with costs to appellant to abide event upon questions of law only.

Judgment reversed, and new trial ordered, with costs to appellant to abide event upon questions of law only; the facts having been examined, and no error found therein. All concur.