(102 App. Div. 39.)

### ROSENSTEIN v. VOGEMANN et aL

(Supreme Court, Appellate Division, Second Department.  February 15, 1905.)

1. TRIAL—REQUEST FOR DIRECTED VERDICT—EFFECT.
   A motion by both parties for the direction of a verdict constitutes an election that the trial judge decide any questions of fact in the case.
   [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 400.]

2. SHIPPING—CHARTER PARTY—CONSTRUCTION—CHARTERERS AS CARRIERS.
   Where a time charter party provided that the captain, although appointed by the owners, should be under the orders of the charterers as regarded employment, agency, or other arrangements, and the charterers agreed to indemnify the owners from all liabilities arising from the captain's signing bills of lading, the charterers were to be regarded as owners as between themselves and shippers.

3. SAME—ARRIVAL OF VESSEL—TERMINATION OF LIABILITY AS CARRIER.
   Where a bill of lading of goods shipped on a vessel provided that goods were to be taken from the ship by the consignees directly they came to hand in discharging, and that the carrier's responsibility was to cease immediately the goods left the ship's deck or tackle, and the vessel had no usual wharf at the port of destination, and on arrival there the consignee of the goods did not receive notice as to the arrival and location of the vessel until between 2 and 3 o'clock of the afternoon of that day, and about 5 o'clock on the afternoon of the next day the goods, which had been unloaded, were destroyed by the collapse of the wharf, the carrier's liability could not be regarded as having then terminated, the notice not having been sufficient under the circumstances.

Appeal from Trial Term, Westchester County.

Action by Louis Rosenstein against Henry Vogemann and others. From a judgment in favor of plaintiff, defendants appeal.  Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

John Notman, for appellants.
H. Aplington (Charles R. Barge, on the brief), for respondent.

WILLARD BARTLETT, J.  In this action the plaintiff sought to charge the defendants, as common carriers, with liability for their failure to fulfill a contract for the transportation of 700 bags of hemp seed from the port of Hamburg, in Germany, to the port of New York. The hemp seed was shipped upon a steamer known as the Louise, which was controlled and run by the defendants under a time charter party originally made by the owners to the Hudspeth Transatlantic Line, and subsequently assigned to the defendants.  The bill of lading was signed "For the Captain, H. Vogemann" (the name H. Vogemann being that under which the defendants did business as co-partners).

Upon the arrival of the Louise at New York on May 8, 1901, notice was sent to the plaintiff that, owing to the lack of pier room, the steamer had been berthed at Pier 4, American Dock Stores at Staten Island. The plaintiff admits having been informed some time between 2 and 3 o'clock on the same day of the fact that the vessel was there. On the afternoon of the following day, at about 5 o'clock, after the hemp seed had been unloaded onto one of the piers of the American Dock Company, the pier collapsed under the weight, owing to the worm-eaten condition of the piles by which the wharf was supported, and by its precipitation into the water the hemp seed was rendered valueless.

In his complaint the plaintiff set out two causes of action; the first based on the alleged violation of the defendants' contract as common carriers arising out of their failure to deliver the goods, and the second founded upon an allegation of negligence in having failed to exercise reasonable care and diligence in selecting a suitable place upon which to deposit the hemp seed when unladen. The defendants' plea was, in effect, a denial of any such ownership or interest in the vessel as would render them liable as common carriers, contending that they acted merely as agents for the owners of the steamer. They furthermore alleged, in substance, that the contract as contained in the bill of lading had been fully performed, and they denied the charge of negligence growing out of the collapse of the pier.

At the close of the evidence on both sides, after the defendants had moved to dismiss the complaint and such motion was denied, motions were made to direct a verdict by both parties, and the court granted the plaintiff's motion, and directed a verdict in his favor for the whole amount of his claim. After the defendants had moved for the direction of a verdict, they made no request to have any issues submitted to the jury, and under the authorities the action of both parties constituted an election or consent that the trial judge should decide any questions of fact which there might be in the case. Under these circumstances the direction of a verdict for the plaintiff implies that the trial judge had found favorably to the plaintiff on all issues of fact essential to be determined in order to justify the direction of a verdict in his favor. In the present case, however, the record shows that there was one issue of fact upon which the judge decided against the plaintiff. That was the issue relating to the defendants' alleged negligence in unloading the hemp seed upon the wharf which subsequently broke down. The plaintiff had contended that the doctrine of res ipsa loquitur applied, and that, the wharf having broken down after the hemp seed was placed upon it, the defendants were liable for negligence resulting in the loss of the seed, unless they furnished a satisfactory explanation of the accident which would absolve them from carelessness. The learned trial judge evidently thought that they had succeeded in rebutting the presumption of negligence, for in directing a verdict he said:

"As far as the falling of the dock itself is concerned, the maxim that the thing speaks for itself I think is fully rebutted by the evidence given here, but on the other questions in the case I direct a verdict for the plaintiff for $3,954.50."

These facts make it plain that the plaintiff prevailed in the court below upon some other ground than that of the alleged negligence of the

defendants.    In other words, he must have prevailed upon the ground
that the defendants had failed to fulfill their contract with the plaintiff
in regard to the transportation and delivery of the hemp seed in ques-
tion.    In directing a verdict for the plaintiff upon these grounds, the
learned trial judge must have held:    (1) That under the charter party
and bill of lading the defendants were the parties who contracted to
carry the plaintiff's goods, and hence became bound by the obligations
of common carriers;    (2) that, therefore, before unlading the goods,
it was the duty of the defendants to give the consignee due notice of
their arrival and unlading, and yield him a reasonable time after notice
given to take charge of and secure them (McAndrew v. Whitlock, 52
N. Y. 40, 11 Am. Rep. 657);    (3) that the carriers did not give the
consignee such reasonable notice in the present case;    (4) that until
the giving of such reasonable notice the defendants remained liable as
common carriers;    and (5) that, inasmuch as the goods were destroyed
before such reasonable notice, and therefore could not be delivered, the
carriers were responsible for the nondelivery, and hence were liable
in damages for the loss of the goods.    The learned counsel for the
appellants has failed to satisfy us that the trial court was wrong in
these conclusions.    It seems to us that the terms of the charter party
were such as to make it a contract for the lease of the vessel for a period
of 12 months, and that the charterers became subject to the duties and
responsibilities of ownership.    "The question as to the character in
which the charterer is to be treated is in all cases one of construction.
If the charter party let the entire vessel to the charterer with a transfer
to him of its command and possession and consequent control over its
navigation, he will generally be considered as owner for the voyage or
service stipulated."    Leary v. United States, 81 U. S. 607, 20 L. Ed.
756.    Here the charter party even goes so far as to provide that the
captain, although appointed by the owners, shall be under the orders and
direction of the charterers as regards employment, agency, or other
arrangements;    and the charterers agree "to indemnify the owners from
all consequences or liabilities that may arise from the captain signing
bills of lading or otherwise complying with the same."

The conclusion that the consignee had not been furnished a reason-
able time before the loss of the goods to take charge of and secure
them seems also to have been justified by the evidence.    Unless, there-
fore, there was some express provision in the bill of lading which re-
lieved the carrier from the general rule laid down in McAndrew v.
Whitlock, supra, the trial judge was right in holding that the plaintiff
was entitled to prevail.

It is argued that under the provisions of the bill of lading the car-
rier's liability ceased upon the arrival of the ship and the discharge of
the cargo, package by package, as the goods left the ship's deck or
tackle.    This contention is based upon a clause in these words:

"Goods to be taken from the ship by the consignees directly they come to
hand in discharging the ship, and the carrier's responsibility to cease package
by package immediately the goods leave the ship's deck or tackle.    If not
taken from alongside by the consignees, they will be landed and deposited at
the expense of the consignee and at his risk of fire, loss or injury on dock or in
warehouse or in craft."

A similar clause was before the Supreme Court of the United States for consideration in the case of Constable v. National Steamship Co., 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903, where it was held that it might reasonably be stipulated in a bill of lading that the responsibility of the vessel should cease after the goods were discharged. This view, however, was expressed in reference to a steamer belonging to one of the great transatlantic passenger lines, and was based, in the opinion of the court delivered by Mr. Justice Brown, upon the view "that the piers of the regular steamship lines are well known to every importer, and the day of arrival of each steamer may be predicted almost to a certainty." He states the general rule to be that a delivery of the cargo, to discharge the carrier from his liability, must be made upon the usual wharf of the vessel, and actual notice be given to the consignee, if he be known. In the present case the vessel upon which the plaintiff's goods were shipped does not appear to have had any usual wharf in New York, or, if she had, such wharf was unavailable for use at the time of her arrival.

It is furthermore argued that by virtue of the clause above quoted from the bill of lading the carriers were in no event liable for goods discharged over the ship's side and deposited on the wharf except as warehousemen, inasmuch as the trial court has found that there was no negligence. In the absence of reasonable notice to the consignee, however, it cannot be held that the liability of the defendants as common carriers had been transformed into a liability as warehousemen at the time of the collapse of the wharf on the very day when the goods were discharged from the steamer. The judgment should be affirmed.

Judgment affirmed, with costs. All concur, except HOOKER, J., not voting.