But there is no evidence on that head. The plaintiff called two real estate experts, who testified to the value of the property in May, 1906, and to what its value would have been with the improvements agreed upon completed, and that there was no substantial change in values for a year thereafter. But that evidence is wholly insufficient to support the verdict in this case; for, upon this record, it is impossible to say that the plaintiff sustained anything but nominal damages. The point was called to the attention of the court and counsel by the motion· to dismiss, and is raised by the appeal from the order denying the motion to set aside the verdict. While technically the plaintiff may have been entitled to a verdict for nominal damages, if the jury found the other facts in his favor, a verdict for $5,600.31 was without any evidence to support it, and should have been set aside.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

### CALLAHAN v. MUNSON S. S. LINE et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. APPEAL AND ERROR (§ 874*)—REVIEW—APPEAL FROM ORDER DENYING NEW TRIAL.

The court on appeal from an order denying a new trial on the minutes, and incidentally denying a motion for a reversal of the direction in favor of defendant, may consider the case, though no appeal has been taken from the judgment for defendant subsequently entered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3481; Dec. Dig. § 874.*]

2. SHIPPING (§ 41*)—CHARTER PARTY—LIABILITY OF CHARTERER.

Where a time charter party of a vessel with machinery, steam winches, and a full complement of officers, seamen, engineers, and firemen expressly placed the same at the disposal of the charterer for carrying merchandise to be loaded and discharged, and provided that the captain should be under the orders of the charterer as to employment, agency, or other arrangements, and that the charterer should indemnify the owner from liabilities arising from the signing of bills of lading or otherwise, the charterer was in effect the owner of the vessel for the time fixed and charged with the duty of unloading the vessel, so that the men at work in unloading it were its employés, and it was liable for the negligence of an employé assisting in unloading the vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 149–155; Dec. Dig. § 41.*]

3. MASTER AND SERVANT (§ 301*)—EXISTENCE OF RELATION.

The mere fact of the power of the selection of the men and the payment of their wages is not the controlling test of the relation of master and servant creating liability for the happening of an accident, but the relationship may depend on the parties' connection with a special or limited service in which the men may be engaged at the very time of the occurrence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

Appeal from Trial Term, Kings County.

Action by Michael Callahan against the Munson Steamship Line and others. From an order denying a motion for new trial made on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

the minutes, and from an order denying a motion to set aside the direction of the court dismissing the amended complaint, plaintiff appeals. Affirmed in part, reversed, and new trial granted in part.

See, also, 125 N. Y. Supp. 1114.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, JENKS, and RICH, JJ.

Thomas F. Magner, for appellant.

John Vernou Bouvier, Jr. (Dudley Davis, on the brief), for respondent Munson Steamship Line.

Bertrand L. Pettigrew, for respondent American Sugar Refining Co. of New York.

HIRSCHBERG, P. J. At the close of the evidence on both sides, the learned trial justice directed a dismissal of the amended complaint, and entertained a motion on the part of the plaintiff for a new trial upon the minutes. The appeal is from the order denying the motion, and incidentally denying a motion made at the same time for a reversal of the direction in defendants' favor. Judgment was subsequently entered in favor of the defendants, but no appeal has been taken therefrom. The case, however, may be heard upon the appeal as taken. Voisin v. C. M. Ins. Co., 123 N. Y. 120, 25 N. E. 325, 9 L. R. A. 612.

The action is for negligence occasioning an accident which occurred on board a steamship, the Denaby, at a dock on the East River in the borough of Brooklyn on the afternoon of April 19, 1907. The plaintiff at the time was one of a gang of stevedores in the employ of the defendant, the American Sugar Refining Company of New York, and was engaged with his fellow workmen in the discharge of the vessel's cargo of sugar. The cargo had been brought to the dock of the sugar refining company by the defendant, the Munson Steamship Line, which latter company had hired or chartered the steamship from the owners thereof for a period of three months, to be used in its business of carrying freight, the charter covering and including the vessel with machinery, steam winches, etc., and a full complement of officers, seamen, engineers, and firemen. The work of unloading consisted in the incipient stage in hoisting the bags of sugar out of a hatch in the vessel by means of a wire cable which operated from a drum on a steam winch on deck, through a single boom-end block directly over the hatch. The outer end of the wire cable had an eye in which was hung, by sister hooks or clippers, a heavy iron chain with a single hook at the lower end. At the close of the day the men were engaged in covering the hatch. Before it could be covered, it was necessary to place in position across the opening a heavy iron thwartship piece, about 15 feet long and 3 feet high, weighing about a ton and a half, and which contained an iron hook for the purpose of attaching it to the hoisting apparatus. The lower hook of the hoisting apparatus had been attached to the hook on the thwartship piece and the latter had been hoisted by the winchman, an employé on the vessel in charge of the winch, until it had become jammed against the hatch coaming. The foreman in charge of the gang of

men with whom the plaintiff was working, all employés of the Sugar Refining Company of New York, ordered the winchman to stop the winch. This was done, and the plaintiff thereupon, with others of his coemployés, seized the piece and hauled it clear of the coaming. When it was thus released, the foreman both called and signaled to the winchman to go ahead again. Instead of doing so, however, the latter negligently reversed the power, whereupon the piece dropped to the deck and toppled over on the plaintiff's foot, causing injuries which required amputation of the limb.

So far as concerns the claim made by the plaintiff against the American Sugar Refining Company of New York, the only ground of negligence asserted or urged is that the chain and hook which were used, and which were furnished by that company, were defective both in construction and in the maner of their application to the apparatus. It is sufficient to say in answer to this claim that the evidence does not establish a defect, or that the accident was caused by a defect in either of the particulars suggested. It is practically undisputed that the accident was occasioned solely by the negligence or insubordination of the winchman, and the case was therefore correctly disposed of with respect to the sugar refining company.

On behalf of the respondent the Munson Steamship Line, it is urged that the winchman, being in the general employment of the unknown owners of the vessel, is to be regarded as engaged in that employment while unloading, and that he is not to be regarded in any sense as a servant of the charterers. In other words, the claim is made that the liability for the winchman's negligence attaches to the owners, and not to the charterers. I cannot accede to this contention. The fair inference from the evidence is that the winchman was one of the crew of the vessel and was furnished in accordance with the provisions of the charter party; and it seems clear to me that by the terms of that instrument the duty of unloading the vessel devolved upon the charterers and was not assumed by the owners.

It is alleged in the amended complaint and admitted in the answer that the Munson Steamship Line is engaged in the business of carrying freight by steamships, and the charter party expressly provides for the delivery of the Denaby to that company for its use in such business until the expiration of the lease, when it is to be redelivered to the agents of the owners. By the terms of the contract, the boat is to be delivered to the charterers at Baltimore at such wharf as the charterers may direct, and is to be redelivered in good order and condition at a port "North of Hatteras, but not north of Boston," the "redelivery port to be named two or three weeks in advance of actual redelivery." During the three-months term, the steamer is expressly placed "at the disposal of the charterers" for carrying merchandise, within certain designated limits of territory, and to be laden and discharged "in any dock or at any wharf or place that the charterers or their agents may direct, provided the steamer can safely lie afloat." The captain (although appointed by the owners) is to be "under the orders and direction of the charterers as regards employment, agency, or other arrangements," the charterers agreeing to indemnify the

owners from all consequences or liabilities that may arise from his signing bills of lading or otherwise complying with the same. And all the steam winches on the vessel are to be at the "charterers' disposal during loading and discharging," the steamer to provide men to work the same both day and night as required, the "charterers agreeing to pay extra expense if any incurred by reason of night work, at the current local rate." In view of these provisions of the contract, it is impossible to avoid the conclusion that the beneficial object sought was to place the charterers in possession of the means of carrying on their business rather than to retain such means in the possession of the owners of the vessel for the purpose of enabling such owners to conduct the charterers' business for hire. Aside from the responsibilities and perils of navigation which are not directly involved, it is difficult to conceive why the contract should place the appliances for loading and unloading the boat at the disposal of the charterers if the owners intended to assume and to retain the burden and responsibility of doing that work.

That the mere fact of the power of the selection of the men and the payment of their wages is not the conclusive or controlling test of the relationship of master and servant creating liability for the happening of an accident, but that such relationship may depend upon the parties' connection with a special or limited service in which the men may be engaged at the very time of the occurrence has been often decided in this state. Among the cases so holding the following may be noted: Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, affirmed 171 N. Y. 677, 64 N. E. 1118; Howard v. Ludwig, 57 App. Div. 94, 67 N. Y. Supp. 1095, affirmed 171 N. Y. 507, 64 N. E. 172; Kellogg v. Church Charity Foundation, 128 App. Div. 214, 112 N. Y. Supp. 566; McCarthy v. McCabe, 131 App. Div. 396, 115 N. Y. Supp. 829; Muldoon v. City Fireproofing Co., 134 App. Div. 453, 456, 119 N. Y. Supp. 320; Kellogg v. Church Charity Foundation, 135 App. Div. 839, 120 N. Y. Supp. 406; Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Friedman v. James F. Scholes Co. (decided by this court December 2, 1910), 126 N. Y. Supp. 1129.

In his brief herein the learned counsel for the respondent, the Munson Steamship Line, cites the case of Auten v. Bennett, 88 App. Div. 15, 84 N. Y. Supp. 689, as an instance wherein a charter party such as that in evidence in this case has been the subject of judicial examination resulting in a determination that the master and crew remained the servants of the owners at the time of the injury complained of. The construction of the contract in that case was aided by oral evidence and the ultimate determination of the controversy was adverse to the respondent's contention. On a subsequent trial of the case a judgment in favor of the defendant, the charterer, was reversed by the Court of Appeals (Auten v. Bennett, 183 N. Y. 496, 502, 76 N. E. 609, 610), and it was held that the charter party then under consideration was in effect a demise of the vessel and not a mere contract of affreightment; that holding being based upon provisions for the de-

livery and return of the vessel similar to those in the document now under consideration. The court said:

"The Appellate Division on the first appeal held that under the terms of the charter party there was no demise of the yacht Mindora to the defendant, and that the latter was not an insurer. We are of the opinion that the very plain reading of the charter party leads to a contrary result. A charter party is nothing more than an agreement between parties, and is to be construed in the same manner as any other contract. In the charter party we are considering the owner agrees to deliver the Mindora at New York. The defendant agrees to return her in as good condition as when she was received. He also agrees to make the return in the city of New York. It would seem as clear as language can make it that the yacht was to be delivered to the defendant and returned by him to the owner at the expiration of the time provided for in the charter party."

In Anderson v. Boyer et al., 156 N. Y. 93, 97, 50 N. E. 976, 977, the plaintiff was injured through the negligence of the captain of a lighter in unloading the charterer's goods at the place of destination. The action was against the owners, but it was held that they were not liable, and that the captain must be deemed to have been acting as the servant of the charterer. The court said:

"The defendants were the owners of the lighter, but they claim that at the time of the accident and for some time prior thereto she was in the possession of one Schoenewolf under a charter which gave to him the absolute control of the lighter, together with its captain and its mate. There is, of course, no question but that, if the defendants by their agreement with Schoenewolf had in fact given him possession and absolute control of the boat and its men until he should have accomplished the work for which he engaged her, then the captain in what he did was acting as the servant of Schoenewolf and not of the defendants."

And at page 103 of 156 N. Y., at page 979 of 50 N. E.:

"It may well be that the captain still owed to these defendants the duty of navigating the vessel carefully, but that Schoenewolf, under this contract, had the right to retain the possession and control of her so long as it should be necessary to move the materials which he had chartered her to move, is beyond question, and it is equally true that during that time he had the right to control both the captain and the mate in loading and unloading the vessel. If more than two men had been needed, either to load or unload, Schoenewolf, and not the defendants, would have had to employ them. As matter of fact, more men were required and were employed by Schoenewolf, the charterer, and certainly nowhere in the contract as testified to, can there be found a basis for charging that the defendants had anything whatever to do with the loading or unloading of this boat, or the right to control it."

In Rosenstein v. Vogemann, 102 App. Div. 39, 42, 92 N. Y. Supp. 86, 88, this court held that, under a charter party precisely similar to the one at bar, the defendants, who were the charterers, and not the owners, were liable for the consequences of a negligent selection of a place to unload and deposit the cargo. The court appears to have been controlled by the fact, as stated in the headnote, that the charter party provided, as in the case at bar, that the captain, although appointed by the owners, should be under the orders and direction of the charterers as regards employment, agency, or other arrangements. A verdict was directed for the plaintiff, and it was decided that in so doing the trial court must have held, among other things:

"That under the charter party and bill of lading the defendants were the parties who contracted to carry the plaintiff's goods and hence became bound by the obligations of common carriers."

The court said:

"The learned counsel for the appellants has failed to satisfy us that the trial court was wrong in these conclusions. It seems to us that the terms of the charter party were such as to make it a contract for the lease of the vessel for a period of 12 months, and that the charterers became subject to the duties and responsibilities of ownership. The question as to the character in which the charterer is to be treated is, in all cases, one of construction. If the charter party let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated.' Leary v. United States, 81 U. S. (14 Wall.) 607 [20 L. Ed. 756]. Here the charter party even goes so far as to provide that the captain, although appointed by the owners, shall be under the orders and direction of the charterers as regards employment, agency, or other arrangements; and the charterers agree 'to indemnify the owners from all consequences or liabilities that may arise from the captain signing bills, of lading or otherwise complying with the same.' "

The case was affirmed in the Court of Appeals (Rosenstein v. Vogemann, 184 N. Y. 325, 336, 77 N. E. 625, 629); that court holding as per the headnote that:

"Where a charter party gives to the charterers of a steamship the absolute right of selecting the dock, wharf, or place for the discharge of the cargo with which the steamship is laden, provided only that the steamer shall always lie safely afloat at any tide, the charterers to indemnify the owner from all consequences or liabilities that might arise from the signing of bills of lading, the owner is not liable for the value of goods destroyed by the collapse of a pier as the result of the alleged negligence of the charterers in failing to exercise reasonable care and diligence in selecting a suitable place in which to unload and deposit the goods."

Independently, however, of the question of negligence, the court also held that the charterers were liable under the terms of the contract as common carriers, saying:

"We consequently conclude that the defendants were not relieved of their liability as common carriers by a discharge of the goods upon the dock, under the circumstances of this case, and that such liability is not dependent upon the question whether they were guilty of negligence with reference to their destruction."

It follows that the order appealed from should be affirmed with costs as to the respondent, the American Sugar Refining Company of New York, but reversed as to the respondent the Munson Steamship Line, and a new trial granted, costs to abide the event. All concur.