defending unjust claims made against it. It is certainly a question which should not be adjudicated without giving the relator an opportunity to be heard.

An order will therefore be signed finding the defendants guilty of contempt and ordering their imprisonment until compliance with the writ, warrant of commitment not to issue however for 10 days from service of the order that the defendants may have an opportunity either to comply with the writ or serve upon the relator's attorneys notice of application returnable not less than 5 nor more than 15 days from the service thereof to a justice of the Appellate Division of this department for a stay, pending the appeal.

The relator should also have $10 for the motion.

---

(71 Misc. Rep. 525.)

## CALLAHAN v. MUNSON S. S. CO.

(Supreme Court, Trial Term, Kings County. April, 1911.)

1. SHIPPING (§ 39*)—CHARTER PARTY—CONSTRUCTION—"DELIVERY"—"REDELIVERY."

In a charter party, in absence of any parol evidence and even against any such evidence, clauses as to "delivery" simply mean that the ship is turned over for the purpose of the charter, and the term "redelivery" means that, at the end, the ship is turned back to the owner, and the hire ceases.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 39.*

For other definitions, see Words and Phrases, vol. 2, pp. 1958–1970; vol. 8, p. 7632; vol. 7, p. 6024.]

2. SHIPPING (§ 41*)—CHARTER PARTY—CONSTRUCTION.

Under a charter party by which the owner of the ship turns over to the charterer the ship with officers and crew to run in the charterer's business, and insures it against loss, and the charterer against liability for negligence in the ship's operation, the charterer, and not the owner, assumes the obligations of a carrier and becomes the owner pro hac vice as to all matters pertaining to the handling and delivery of cargo, but not as to the navigation of the ship.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 41.*]

3. SHIPPING (§ 50*)—INJURIES TO THIRD PERSONS.

However the liability for the act of a winchman may be shifted on the shipowner by the charterer, as between themselves, the charterer by a time charter obtains disposal of the winches in discharging, and having disposal of the appliance is provided with the men, who then do charterer's special work and not the work of the shipowner, and the charterer is liable for their negligence.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 50.*]

4. SHIPPING (§ 50*)—ACTION FOR INJURY—EVIDENCE.

In an action against a charterer of a vessel for injuries caused by the negligence of a winchman, evidence of the recognition or nonrecognition of an insurable interest of the charterer in the vessel is incompetent.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 50.*]

5. MASTER AND SERVANT (§ 301*)—PERSONAL INJURY—LIABILITY OF CHARTERER.

A temporary relation of master and servant outside of that in which the servant is appointed and paid, is recognized in the maritime law,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

especially under time charters, where the criterion of responsibility is not in whose pay the servant is, but whose duties and liabilities he is at the time performing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1213, 1214; Dec. Dig. § 301.*]

Action by Michael Callahan against the Munson Steamship Company, for injuries, while in the employ of a stevedore, resulting from the negligence of a winchman. Verdict for plaintiff, and defendant moves to set it aside and for a new trial, and plaintiff moves for an additional allowance. Motions denied.

See, also, 127 N. Y. Supp. 1115.

Thomas F. Magner, for plaintiff.
John V. Bouvier, Jr., and Charles S. Haight, for defendant.

PUTNAM, J. The steamship Denaby was in the service of the defendant, under a time charter party (known as the government form) which provided that the owner should furnish the vessel with machinery, steam winches, etc., and a full complement of officers, seamen and other ship's employés. Plaintiff was hurt by the dropping on his leg of a hatch beam or strong back, as the men were covering the hatch at the close of the day's work discharging a sugar cargo.

Upon this retrial, the court, following the ruling of the Appellate Division (141 App. Div. 791, 126 N. Y. Supp. 538), instructed the jury that they could find a relation of master and servant between the winchman and the Munson Company. Apparently, as to this defendant the same facts were shown as upon the former trial. Defendant, however, sought to introduce expert evidence to explain the terms of the time charter. Under the first clause, "owner to pay for insurance of the vessel," defendant sought to show that the shipowner had insured the Denaby, not only against ordinary sea perils, but (by means of mutual club protection) also against negligent acts, like those in this case. Evidence was also offered as to the terms "delivery" and "redelivery," as to the clause No. 9, that the master, although appointed by the owner, shall be under the orders and direction of the charterers as to employment, agency or other arrangements; and as to clause No. 24, "all steam winches to be at the charterer's disposal during loading and discharging, and steamer to provide men to work same both day and night as required." Further, that among marine insurers a time charterer was considered to have no insurable interest in the ship itself. This evidence was rejected. As modified and explained by the proposed evidence, this hiring of the Denaby would amount to this: The shipowner says to the charterer, "I have a ship with officers and crew, which I will hand over to you to run in your business; I will insure the vessel against loss, and I will even protect you against certain liabilities for negligence in the ship's operation."

[1] Without any parol evidence, and even against any such evidence, clauses as to "delivery" simply mean that the ship is turned over for the purpose of the charter; the term "redelivery" means that, at the end, the ship is turned back to the owner and hire ceases.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In matters connected with the transportation of goods, the charterer can use the master as charterer's agent, so that the master shall sign bills of lading and transact other affreightment business as charterer's representative.

[2] Would such amplifications of the written time charter change the rule of liability already applied? The older rule, announced in Blake v. Ferris, 5 N. Y. (1851) 48, 55 Am. Dec. 304, and Maxmilian v. Mayor, 62 N. Y. (1875) 160, 20 Am. Rep. 468, was that the right to control, employ, and discharge the servant is essential to the master's liability. Judge Folger declared:

"It results from the rule being thus based, that there can be but one superior at the same time, and in relation to the same transaction." 62 N. Y. 160, 20 Am. Rep. 468.

Hence, it is to-day urged that, as the winchman on a chartered ship is paid by the owner, being on the ship's articles as one of the crew, so that the ship is liable in rem for his negligence, the winchman must be legally the owner's servant, and, hence, cannot also be a servant of the charterer. But, in this very charter party, the master continues the servant of the owner, who alone has the right to discharge him; and yet, in the charterer's business transactions, he is pro hac vice the charterer's servant. Such a contract constitutes a hiring of the ship, as a vehicle in which the charterers may carry cargoes for their own account. The charterers, and not the owner, assume the obligations of a carrier, and "become the owners, pro hac vice, as respects all matters pertaining to the handling and delivery of cargo, but not as regards the navigation of the ship." The Centurion (D. C.) 57 Fed. 412.

The holder of a bill of lading signed by such a master usually proceeds against the vessel. The defending shipowner in the admiralty courts may by petition bring in the charterer as codefendant, when the judgment may go against the ship and the charterer, or primarily against the charterer, with a recovery over against the ship. The Alert (D. C.) 40 Fed. 836; Id. (D. C.) 44 Fed. 685; Id., 61 Fed. 113, 9 C. C. A. 390.

Argument was made whether the time charter does amount to a "demise" of the ship. As to navigation, maintenance, and details of seaworthiness, the owner remains in possession; but as to cargo the owner is not carrier, and cannot assert a lien, as such, and by recent decisions is not liable for shortage upon the out turn of the goods. Golcar & Co. v. Tweedie T. Co. (D. C.) 146 Fed. 563. The decisions as to demise of a ship being in some confusion in England (Carver Carriage by Sea [4th Ed.] 148, 156), the term in recent use is *complete* demise, which such a time charter seldom is. Weir v. Union S. S. Co. (1900) 1 Q. B. 28, 38, affirmed (1900) A. C. 525. A modern time charter of a merchant steamer has become complex. The old tests of a demise do not always apply. Between shipowner and charterer, the point to be settled is which has the right, duty, and responsibility in respect to the detail in controversy; and, if this point is determined, "the question whether the contract otherwise more nearly

resembles one of demise than one of carriage becomes academic." Per Lord Davey, in Weir v. Union S. S. Co. (1900) A. C. 525, 531.

[3] Courts have differed widely as to the acts of a winchman. In 1884 the federal court held him to be fellow servant with stevedore's men. The Harold (D. C.) 21 Fed. 428. The New York courts took the contrary view (Johnson v. Netherlands American Steam Nav. Co., 132 N. Y. 576, 30 N. E. 505), which has finally obtained in the Supreme Court (Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480). However that liability may be shifted on the shipowner by the charterer, as between themselves, the fact remains that the charterer by the contract obtains disposal of the winches in discharging, and, having disposal of the appliance for this purpose, is provided with the men, who then do charterer's special work, and not the work of the shipowner.

[4] It is urged that the Munson Steamship Company did not actually exercise control over this winchman. Winchman's work is not one over which supervision is necessary, provided the man can run the winch at all. One of the first duties of a steamer's mate with a fresh crew is to teach them to drive the winches. Bergen, Steamship, 26. The reported cases do not show that an officer is directing a winchman, whose duty is simply mechanical—to apply the starting or reversing lever and the brake, according to signals. The fact that, ordinarily, in admiralty the liability is worked out through the ship in rem, or by direct action against the shipowner, does not prevent the application of the present rule, if justice requires it, even if the parties try to shift all these liabilities upon the shoulders of the shipowner, who, in turn, may ultimately look to his underwriters or his protection clubs. Evidence as to insurable interest is clearly incompetent. Legal liability may afford a basis for an insurable interest; but the recognition or nonrecognition of an insurable interest cannot create or annul legal liabilities.

[5] The master may be an agent of the charterer as to cargo without making him charterer's representative for the purposes of navigation. Hence, it does not follow that liability for the winchman would make the charterer answerable for bad navigation, or impose upon the charterer any liability for collision. The Hathor (D. C.) 167 Fed. 194; The Volund, 181 Fed. 643, 104 C. C. A. 373.

A temporary relation of master and servant, outside of that in which the servant is appointed and paid, recognized herein by the Appellate Division, as illustrated in Johnson v. City of Boston, 118 Mass. 114, 23 Cyc. 1622, Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172, is also accepted in the maritime law. It is applied especially to ships under time charter, where the criterion of responsibility is not in whose pay the servant is, but whose duties and liabilities is he at the time fulfilling. The Volund, 181 Fed. 643, 647, 104 C. C. A. 373.

Motion for new trial denied, as is also plaintiff's motion for an additional allowance.

Motions denied.