Kgell BERGAN, Plaintiff-Appellant,

v.

INTERNATIONAL FREIGHTING CORP., Inc., Defendant-Appellee,

and

E. I. DuPont de Nemours & Co., and Odfjell Line, Inc., Defendants.

No. 279, Docket 24614.

United States Court of Appeals Second Circuit.

Argued March 26, 1958.

Decided April 24, 1958.

Herbert W. Sugarman, Far Rock-away, N. Y. (Harold P. Clune, New York City, on the brief), for plaintiff-appellant.

Vernon S. Jones, New York City (Kirlin, Campbell & Keating, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge and HAND, Circuit Judge, and DIMOCK, District Judge.

DIMOCK, District Judge.

Plaintiff appeals from a judgment dismissing, at the end of plaintiff's case, his action under the Jones Act. 46 U.S.C. § 688, 41 Stat. 1007. Judge Edelstein grounded the dismissal on his conclusion that plaintiff, in carrying out the duties in the course of which he was injured, was an employee of the shipowner and not of the charterer, defendant International Freighting Corp. Inc.

The appeal presents the issue whether, in spite of the fact that the ship was being operated under a time charter and not a demise, a question of fact as to employment by the charterer was presented which should have been submitted to the jury.

Plaintiff was in the general employ of the owner of the Norwegian M. S. Bowhill which paid the wages of the crew and of the captain and chief engineer who were concerned in the accident. While the vessel was anchored in the harbor of Santos, Brazil, passengers were permitted to go ashore for pleasure in the ship's motorized lifeboat which officers and crew members used for their own transportation. It was shortly after the lifeboat had returned to the Bowhill with passengers and crew members from one of its trips that the accident happened. All of the occupants of the lifeboat had been discharged on the port side of the vessel and had gone up the gangway. Two officers of the ship had run the lifeboat around the stern of the Bowhill to the starboard side. Preparations were then made to lift the lifeboat from the water to the boat deck. The testimony was that the captain, who was on the boat deck with the chief engineer, asked plaintiff to straighten out a fouled cable around one of the drums on the winch. Plaintiff says that, while he was engaged in this operation, the winch was put in motion without warning to him and the cable became taut and caught and injured his hand. There was evidence that the chief engineer was standing beside the only switch which controlled the electric winch which was to be used for hoisting the lifeboat to the boat deck. The plaintiff bases his claim upon alleged negligence of the captain and chief engineer.

To recover under the Jones Act plaintiff must prove himself an employee of the defendant. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692. He must also prove that his injury arose in the course of that employment. 46 U.S.C. § 688. Speaking in terms of this case, plaintiff must prove that, when he was straightening the fouled cable, he was an employee of the defendant charterer.

Under a time charter the shipowner agrees to carry goods in a ship in which the charterer has no property interest; the crew are the shipowner's men. Under a demise, or bareboat charter, the shipowner parts with all possession of the ship and gives the charterer an interest in it akin to that of a lessee of real property; the crew are the charterer's men. Gilmore & Black, Law of Admiralty, pp. 170–171. Scrutton, Charter Parties, 16th Ed., p. 5. The charter party in this case provides in paragraph 26: "Nothing herein stated is to be construed as a demise of the vessel to the

Time Charterers. The owners to remain responsible for the navigation of the vessel, insurance, crew, and all other matters, same as when trading for their own account."

■ Thus in general, under a time charter, crew and officers are employees of the shipowner and the shipowner acts as an independent contractor in relation to the charter. Doubtless the shipowner and charterer, in their time charter party, could express a different intent so clearly that, with respect to a certain activity, the shipowner would act as agent of the charterer and thus make the shipowner's employees sub-employees of the charterer. Our question is whether there was evidence to go to the jury that that had been done in this case.

Appellant points to the provision in the charter party "that in case any fines or extra expenses are incurred in consequence of the carriage of passengers, charterers are to bear such risk and expense," and says that the lifeboat was operated in the carriage of passengers and that the expense of its operation was therefore to be borne by the charterer. Appellant further says that port regulations forbade leaving the lifeboat in the water under penalty of a fine and that, in raising the lifeboat, the crew were acting in the interest of the charterer to avoid liability for fines.

■ Even so, that would not be enough to make servants of the charterer out of the members of the crew engaged in that operation. The mere fact that the charterer is liable for the expense of an operation under the terms of a time charter is insufficient to render the shipowner his agent in performing it. Munson S. S. Line v. Glasgow Nav. Co., 2 Cir., 235 F. 64.

Callahan v. Munson Steamship Line, 141 App.Div. 791, 126 N.Y.S. 538, and the same case on a retrial at 71 Misc. 525, 130 N.Y.S. 869, cited as contrary, were decided prior to the decision of Munson S. S. Line v. Glasgow Nav. Co. in this court and seem to have been *sub silentio* overruled in the New York courts by Barnevo v. Munson Steamship Line, 239 N.Y. 486, 147 N.E. 75, which cited Munson S. S. Line v. Glasgow Nav. Co. as authority.

Thus far we have considered the possibility that the charterer, by agreement with the shipowner, might have constituted the shipowner's employees the charter's sub-employees. There is the further possibility that a charterer, by agreement directly with the shipowner's employees, might constitute them the charterer's employees. Such a case was Bull v. New York & Porto Rico S. S. Co., 2 Cir., 167 F. 792, where the charterer loaded some seventeen-ton boilers on the ship by a special derrick lighter supplied by the charterer and made a direct deal with the master by which the master agreed, for a gratuity, to unload them. There was no evidence of any arrangement direct with the master or ship's people here, however.

Nothing was presented below but construction of a written document and consideration of uncontradicted evidence. Under no permissible inference could the jury have found defendant liable. Judge Edelstein, therefore, properly dismissed the action.

The judgment is affirmed.